# UNITED STATES DISTRICT COURT
for the
District of Utah

FILED
2026 MAR 6 PM 3:12
CLERK
U.S. DISTRICT COURT

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 4:26-mj-00018 PK
)
A GOOGLE PIXEL WATCH 3 WITH A SERIAL )
NUMBER OF 4a241jeayw01ka )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the _____ District of ____Utah____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A | Transportation/Receipt/Distribution/Possession of Child Pornography |
| 18 U.S.C. 1466A | Production of obscenity |

The application is based on these facts:
See attached Affidavit, incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

FBI SA Charles Fowler
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 6, 2026

*Judge's signature*

City and state: St. George, Utah      United States Magistrate Judge Paul Kohler
*Printed name and title*

MELISSA HOLYOAK, United States Attorney (#9832)
CHRISTOPHER BURTON, Assistant United States Attorney (NV #12940)
Attorneys for the United States of America
Office of the United States Attorney
20 North Main Street, Suite 208
St. George, Utah 84770
Telephone: (435) 634-4270
Christopher.Burton4@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A GOOGLE PIXEL 8A WITH IMEI OF 350355930699685 | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:26-mj-00017 PK |
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT AUTHORIZING THE SEARCH OF A GOOGLE PIXEL WATCH 3 WITH A SERIAL NUMBER OF 4a241jeayw01ka | AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT<br><br>Case No. 4:263-mj-00018 PK |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Charles Fowler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I have been employed by the FBI since February of 2023.  I am currently assigned to the FBI Salt Lake City Division, Monticello Resident Agency (RA), and assigned to investigate criminal violations, and terrorism matters.  As a Special Agent with the FBI, I have participated in or received training related to the investigations of bank robberies, thefts, frauds, impersonations of federal officers, frauds, identity thefts, threats, interstate commerce crimes and other criminal violations.  I have investigated many crimes of violence and frauds, including thefts and robberies.

## PURPOSE OF AFFIDAVIT

2.      I submit this Affidavit in support of an application for a search warrant for a Google Pixel 8A with IMEI of 350355930699685 ( "Subject Device 1") and Google Pixel Watch 3 with a serial number of 4a241jeayw01ka ( "Subject Device 2"), that are currently secured in the evidence room at the Grand County Sheriff's Office in Moab, Utah.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2252A(a)(5) (Possession of child pornography); 18 U.S.C. § 2252A(a)(1) (Transportation of child pornography); 18 U.S.C. § 2252A(a)(2), (Distribution/Receipt of child

pornography); and 18 U.S.C. § 1466A(a) (Production of obscenity) (collectively the "Target Offenses") have been committed by Kyler Quinn. There is also probable cause to believe that the Subject Devices described in Attachments A-1 and A-2 contain evidence, instrumentalities, contraband, and/or fruits of the Target Offenses as further described in Attachment B.

## SEARCH METHODOLOGY TO BE EMPLOYED

5. The search procedure of electronic data contained in computer hardware, computer software, and/or memory storage devices may include the following techniques (the following is a non-exclusive list, as other search procedures may be used):

　　a.　　examination of all of the data contained in such computer hardware, computer software, and/or memory storage devices to view the data and determine whether that data falls within the items to be seized as set forth herein;

　　b.　　searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

　　c.　　surveying various file directories and the individual files they contain;

　　d.　　opening files in order to determine their contents;

3

e. using hash values to narrow the scope of what may be found. Hash values are used to find previously identified files of images of child pornography and do not capture images that are the result of new production, images embedded in an alternative file format, or images altered, for instance, by a single pixel. Thus, hash value results are under-inclusive, but are still a helpful tool;

f. scanning storage areas;

g. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are likely to appear in the evidence described in Attachment A; and/or

h. performing any other data analysis technique that may be necessary to locate and retrieve the evidence described in Attachment B.

## BACKGROUND REGARDING DIGITAL DEVICES

6. Based upon my training, my experience, and my discussions with other law enforcement agents, I know the following:

a. Users of digital devices increasingly choose to store items in digital form (e.g. pictures, documents) because digital data takes up less physical space, and can be easily organized and searched. Users also choose to store data in their digital devices, such as cell phones, because it is more convenient for them to access data in devices they own, rather than to later spend time searching for it. Keeping things in digital form can be safer because data can be easily copied and stored off site as a failsafe.

b.        Users also increasingly store things in digital form because storage continues to become less expensive. Today, 500 gigabyte (GB) hard drives are not uncommon in computers. As a rule of thumb, users with 1 gigabyte of storage space can store the equivalent of 500,000 double spaced pages of text. Thus, each computer can easily contain the equivalent of 250 million pages, that, if printed out, would fill three 35' x 35' x 10' rooms. Similarly, a 500 GB drive could contain 450 full run movies, or 450,000 songs, or two million images. With digital devices, users can store data for years at little or no cost.

c.        Storing data in digital form and not deleting it mirrors users' online habits where users have, for years, been encouraged to never delete their E mails. For example, on March 27, 2007, Yahoo! Mail announced free, "unlimited" capacity that gave their users "the freedom to never worry about deleting old messages again." See < http://ycorpblog.com/2007/03/27/yahoo mail goes to infinity and beyond/> (accessed April 18, 2012). Similarly, since June 2007, Google, Inc. has promoted free, increasingly larger storage "so you should never have to delete mail." <http://gmailblog.blogspot.com/#!/2007/06/welcome to official gmail blog.html>; see also <http://gmailblog.blogspot.com/2007/10/more gmail storage coming for all.html> (accessed April 18, 2012) (promoting its "Infinity+1" plan to constantly give subscribers more storage). Hotmail also has advertised free, "virtually unlimited space," noting that "Hotmail gives you all the space you need."  See

<http://www.microsoft.com/windows/windowslive/anotherlookathotmail/storage/> (accessed April 18, 2012).

    d. Digital devices can also store data automatically, without a user's input. For example, network logs may track an employee's actions for company auditing purposes or E mail headers may automatically list the servers which transmitted the E mail. Similarly, a web browser (i.e. an application such as Internet Explorer used to access web pages) can track a user's history of websites visited so users can more easily re access those sites. Browsers also often temporarily cache files from recently accessed web pages to improve the user's experience by reducing that page's loading time. These examples illustrate how the interaction between software and operating systems often results in data being stored without a user's knowledge. Even if a sophisticated user understands this automatic storage of data, attempts at deleting this data often fail because the data may be automatically stored multiple times and in different locations. Thus, digital evidence may exist despite attempts at deleting it.

Digital data is particularly resilient to deletion. First, as noted, data is often automatically stored multiple times in multiple places, where even sophisticated users may not be able to locate. Second, digital data can be recovered years after it has been saved, or viewed B even after such data has been deleted. For example, when a user deletes a file on a computer, the file is sent to the recycle bin, where it can still be retrieved. Even if the file is deleted from the recycle bin, the data does not actually disappear; rather, it remains in "free space" or "slack space" (i.e. in unused space) until it is overwritten by new data.

Third, an operating system may also keep deleted data in a "recovery" or "swap" file. Fourth, files from websites are automatically retained in a temporary cache, which are only overwritten as they are replaced with more recently viewed web pages. Thus, the ability to retrieve residues of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer use habits.

## PROBABLE CAUSE

### Details of the Investigation

7. On November 24, 2025, an individual hereafter referred to as VICTIM contacted the Grand County Sheriff's office to make a report about a Facebook message they received from an account named "Rexa Deen." The message contained a link and when VICTIM accessed the link, it contained an Artificial Intelligence (AI) modified video of VICTIM performing oral sex. VICTIM then visited the "Rexa Deen" Facebook profile and found numerous pictures of herself taken from various social media profiles. The photos of VICTIM had been digitally altered to remove clothing and depict the VICTIM nude, including exposing her pubic area. Some of the photos depicted VICTIM when she was under the age of 18.

8. On November 25, 2025, Grand County Deputies applied for and received a search warrant for the "Rexa Deen" Facebook account. In the subsequent return, investigators identified 88 AI-modified images of VICTIM making it appear as if she was nude, including 56 AI-modified pornographic images of VICTIM when she was a minor.

7

9. In one such video obtained from the "Rexa Deen" Facebook account, VICTIM is completely nude with smaller breasts and no hair on her pubic area. In the video, VICTIM shifts her weight to her left leg while her right arm lowers and goes behind her back as she smiles at the camera. According to VICTIM, she was 11 years old when the original image that had been modified for the purpose of the video was taken. The video has a watermark reading "DeepAnyy.AI."

10. In another photo, VICTIM is smiling, her hair pulled back, her right arm raised to about shoulder height with her arm bent slightly at the elbow, her weight is braced on her right leg with her left leg slightly bent at the knee. This altered photo of VICTIM at Disney Land was modified for multiple pictures and videos. In this modified picture, all of VICTIM's clothing has been removed and she appears completely nude, with her breasts and pubic area fully displayed. The original image that was taken at Disney World was posted on Facebook by VICTIM father in 2014, when VICTIM was 11 years old.

11. Investigators also observed that some of the digitally altered photos of VICTIM were posted on November 5, 2025, and the listed author was Facebook account "Kyler Quinn (61578045282962)." In the "Rexa Deen" account, there are a total of 42 instances where "Kyler Quinn (61578045282962) is listed as the author of digitally altered photos of VICTIM. The "Rexa Deen" account return also showed that a Google Pixel 8a had connected to the account around the same time as the digitally altered photographs of VICTIM were posted.

12. According to the return, the IP address used to manage and create the account was a Google Virtual Private Network (VPN) account. Investigators applied for and received a search warrant for the Google VPN user that created the account but Google did not have any information to produce about the user.

13. Grand County investigators were familiar with a local person named Kyler Quinn and learned that he was a person familiar to VICTIM.

14. On February 17, 2026, investigators secured a search warrant under Case No. 4:26-mj-00013 for information associated with the "Kyler Quinn" Facebook account. Investigators subsequently received a return from Facebook and identified the account as belonging to Quinn. Numerous selfie-style photographs were seen on the account that are consistent with known photographs of Quinn. The Facebook return also listed a Google Pixel 8a as a device that was used to "de or re-activate" the account on November 26, 2025, and to change the password on November 16, 2025, among other actions. There was also a message sent by the Kyler Quinn Facebook account on September 19, 2025, stating "this Google Pixel watch 3 is in perfect condition. It's a great watch with many features." The message also contained a photo of the watch.

15. Officers informed Quinn's probation officer of the ongoing investigation and the probation officer contacted Quinn and ultimately arrested him for violations of his probationary terms on December 15, 2025. At the time Quinn was arrested, he was in possession of a Google Pixel 8a cell phone (the same model of device associated with the "Rexa Deen" and "Kyler Quinn" Facebook accounts) as well as accompanying watch

(the Subject Devices). These devices are seized and later provided to investigators. Since that time, the Subject Devices have remained in the custody of the Grand County Sherriff's Office in Moab, Utah, and are in substantially the same condition as when they were seized.

16. Based on my training and experience, the Subject Devices have a symbiotic relationship and can transfer data between the two.

17. Investigators previously applied for and received a search warrant for the Subject Devices. However, this affidavit does not rely on that affidavit or the results of the prior search of the Subject Devices.

## CONCLUSION

18. Based on the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that the Subject Device contain evidence of Title 18 U.S.C. § 2252A(a)(5) (Possession of child pornography); 18 U.S.C. § 2252A(a)(1) (Transportation of child pornography); 18 U.S.C. § 2252A(a)(2) (Distribution/Receipt of child pornography); and 18 U.S.C. § 1466A(a) (Production of obscenity), and that the information sought herein will materially aid the investigation.

Respectfully submitted,

_____
Charles Fowler
Special Agent
FBI

Subscribed and sworn to before me on March 6, _____, 2026

_____
PAUL KOHLER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A-1
**Property to Be Searched**

Subject Device 1 is described as a Google Pixel 8a with IMEI of 350355930699685, and any SIM card contained therein, that is currently secured at the evidence room located at the Grand County Sherriff's Office located in Moab, Utah.

## ATTACHMENT A-2
**Property to Be Searched**

Subject Device 2 is described as a Google Pixel Watch 3 with a serial number of 4a241jeayw01ka, and any SIM card contained therein, that is currently secured at the evidence room located at the Grand County Sherriff's Office located in Moab, Utah.

**ATTACHMENT B**
**LIST OF ITEMS TO BE SEARCHED FOR AND SEIZED**

This affidavit is in support of application for a warrant to search a Google Pixel 8a with IMEI of 350355930699685, and any SIM card contained therein, as well as a Google Pixel Watch 3 with a serial number of 4a241jeayw01ka, and any SIM card contained therein (collectively the "Subject Devices") which are more specifically identified in the body of the application and in Attachment A, that can be used to store information and/or connect to the Internet, or which may contain mobile devices, and to seize records and materials that are fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 2252A(a)(5), 18 U.S.C. § 2252A(a)(1); 18 U.S.C. § 2252A(a)(2); and 18 U.S.C. § 1466A(a) (the "Target Offenses"). The records and materials are more specifically identified as:

1. Any and all computer software, including programs to run operating systems, applications (like word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, pertaining to the Target Offenses;

2. Any computer-related documentation, which consists of written, recorded, printed or electronically stored material that explains or illustrates how to configure or use computer hardware, software or other related items pertaining to the Target Offenses;

3. Any and all records and materials, in any format and media (including, but not limited to, text messages, SMS messages, picture/video messages, social media communication, envelopes, letters, papers, e-mail, chat logs and electronic messages),

2

pertaining to the Target Offenses;

4. Records and information evidencing occupancy or ownership of the Subject Devices described above, including, but not limited to, sales receipts, registration records, records of payment for Internet access, usernames, passwords, device names, and records of payment for access to newsgroups or other online subscription services;

5. Stored electronic data and related digital storage relating to Global Positioning System ("GPS") data, pertaining to the Target Offenses;

6. Records evidencing the use of the Subject Devices' capability to access the Internet, including: records of Internet Protocol addresses used and records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, all pertaining to the Target Offenses;

7. Images and videos, to include any metadata identifying the date and location of the Subject Devices at the time of the photo or video pertaining to the Target Offenses;

8. Evidence of who used, owned, or controlled the Subject Devices at the time the things described in this warrant and related to the Target Offenses were possessed, accessed, received, created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

9. Evidence of software that would allow others to control the Subject Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of

the presence or absence of security software designed to detect malicious software; and evidence of the lack of such malicious software;

10. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Subject Devices;

11. Evidence of the times the Subject Devices were used as related to the Target Offenses;

12. Passwords, encryption keys, and other access devices that may be necessary to access the Subject Devices;

13. Child pornography, as defined in 18 U.S.C. § 2256;

14. Obscenity, as defined in 18 U.S.C. § 1461.